IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

NICKY J. BARBER                                                    PLAINTIFF

          v.                         Civil No. 07-3065

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

        Plaintiff, Nicky Barber, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (Commissioner)

denying his claim for a period of disability, disability insurance benefits ("DIB"), and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act

(hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the

court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

        The plaintiff filed his applications for DIB and SSI on May 24, 2004, alleging an onset

date of April 13, 2004, due to depression, post-traumatic stress disorder ("PTSD"), intermittent

explosive disorder, borderline intellectual functioning ("BIF"), arthritis, degenerative disc

disease ("DDD"), burn injuries to his hands, hypertension, and vertigo. (Tr. 56-58, 99-100, 337-

339).  His applications were initially denied and that denial was upheld upon reconsideration.

(Tr. 32-36, 39-42, 342-343).  An administrative hearing was held on October 6, 2006. (Tr. 348,

350-388).  Plaintiff was presented and represented by counsel.

AO72A
(Rev. 8/82)

At this time, plaintiff was 46 years of age and possessed a ninth grade education. (Tr. 330-331). He had past relevant work ("PRW") as a die-cast machine operator II and a poultry production operator. (Tr. 67-74).

On May 25, 2007, the Administrative Law Judge ("ALJ") concluded that plaintiff's PTSD, intermittent explosive disorder, BIF, arthritis in the right shoulder, DDD in the lower lumbar spine, burn injuries to his hands, hypertension, and vertigo were severe impairments, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, due to medical improvement. (Tr. 15). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to lift 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours, and stand and walk for 2 hours during an 8-hour workday. (Tr. 16). He also concluded that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl and frequently grasp and finger. From a mental standpoint, the ALJ found that plaintiff could only perform work where interpersonal contact is incidental to the work performed; complexity of tasks is learned and performed by rote with few variables and little judgment; and supervision required is simple, direct and concrete. (Tr. 15). With the assistance of a vocational expert, the ALJ then concluded that plaintiff could perform work as an assembler and escort driver. (Tr. 22).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 1, 2007. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 6, 7).

## II.    __Applicable Law__:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

3

A.    **The Evaluation Process**:

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

4

III.   **Discussion**:

After reviewing the entire record in this case, this Court is concerned by the ALJ's failure to properly consider plaintiff's vertigo when determining plaintiff's RFC. The ALJ is required to consider the dosage, effectiveness and side effects of the plaintiff's medications. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

In the present case, treatment notes dated well in advance of the relevant time period indicate plaintiff had a history of chronic dizziness/vertigo. (Tr. 228-231). In April 2004, he was diagnosed with hypertension, vertigo, anxiety, and GERD. (Tr. 242). At this time, he reported increased problems with vertigo. The doctor prescribed Norvasc, Meclizine, Paxil, and Protonix. (Tr. 242). Later that month, he was treated in the Emergency Room ("ER") for gastroesophageal reflux, chest pain, and vertigo. (Tr. 216-221).

In May 2004, the doctor noted that plaintiff's vertigo was some better, while taking Meclizine. (Tr. 241). Then, in June 2004, plaintiff was again diagnosed with chronic lumbosacral back pain, a sleep disorder, gastritis reflux, hypertension, and vertigo. (Tr. 240). The doctor prescribed Vistaril, Aciphex, and Ultracet. (Tr. 240).

On December 21, 2004, plaintiff underwent a general physical exam. (Tr. 232-238). He reported problems with lower back pain, right elbow pain, shoulder pain, and chronic vertigo. His medications were said to include Hydrocodone, Antivert, Vistaril, Accupril, Norvasc, and Bextra. His ability to stand and walk without assistive devices, walk on heel and toes, and squat and arise for a squatting position were all limited. The doctor diagnosed him with lower back pain of unknown etiology, right shoulder pain, possibly bursitis, right elbow pain, 27% surface area burns with pain and scaring of the hands, hypertension, and probable post-traumatic stress

5

disorder secondary to the fire.  The doctor determined that plaintiff would have moderate limitations related to walking, sitting, and standing for prolonged periods of time and moderate-to-severe limitations with regard to stooping and lifting.  Further, he concluded that plaintiff would have moderate limitations related to his hands and handling.  (Tr. 232-238).

On March 9, 2006, plaintiff was hospitalized for dizziness, but not true vertigo.  (Tr. 287-291).  He was noted to be in moderate distress with a headache.  Plaintiff also stated that he was sleeping a lot.  An EKG and cardiac monitor were both normal, as were chest x-rays.  Plaintiff was diagnosed with dizziness and a viral syndrome, and prescribed Meclizine.  (Tr. 287-291).  However, on March 14, 2006, plaintiff reported continued dizziness with any change in head or body position.  (Tr. 294).  Plaintiff also testified to having problems with vertigo.  (Tr. 361).  Although the Meclizine helped some, he continued to have dizzy spells 3-4 times per week.  (Tr. 363).

After reviewing this evidence, the ALJ concluded that plaintiff's vertigo was severe, but discounted it because plaintiff had not been diagnosed with a vestibular disorder by a neuro-otolaryngologic examination.  He also discounted plaintiff on the grounds that he did not seek consistent treatment, and that the medication helped alleviate his symptoms.  First, we note that there is no evidence to suggest that plaintiff was not "pursuing a valid course of treatment." *Tate v. Apfel*, 167 F.3d 1191, 1197 (8th Cir. 1999).  Plaintiff was never referred to a specialist for this problem.

Second, plaintiff was prescribed Meclizine, but this did not fully alleviate his symptoms.  Plaintiff continued to suffer from dizzy spells/vertigo.  *Reeder v. Apfel*, 214 F.3d 984, 988 (8th

Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record).

Lastly, research reveals that a side effect of many of plaintiff's medications is dizziness and drowsiness.  As previously stated, the ALJ is required to consider the dosage, effectiveness and side effects of the plaintiff's medications.  *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).  Records indicate that plaintiff was taking Meclizine, Vistaril, Accupril, Norvasc, and Bextra.  A side effect of each of these medications is dizziness and drowsiness.  *See generally,* PHYSICIAN'S DESK REFERENCE, *at www.pdrhealth.com.*  As such, we believe that the ALJ should have taken plaintiff's vertigo into consideration when formulating his RFC.  Clearly, a person who experiences dizzy spells does not need to work near or in the vicinity of dangerous or moving equipment or machinery and should avoid heights, stairs/steps, and uneven working surfaces.

Also of concern is the vocational expert's testimony.  In response to the first hypothetical question in which the ALJ indicated that plaintiff could only perform work where interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote with few variables and requires little judgment; and the supervision required is simple, direct and concrete, the expert testified that work existed in significant numbers in the national economy that plaintiff could perform. (Tr. 383-384)  However, when the ALJ specifically listed out plaintiff's mental limitations (moderate limitations with regard to understanding, remembering, and carrying out detailed instructions; maintaining attention; completing a normal workday; interacting with the public; setting realistic goals; and, making plans independently of

others), the expert stated that plaintiff's difficulty concentrating even up to 1/3 of the time would prevent him from being able to maintain employment.  (Tr. 387).

We note that the ALJ's hypothetical was based on the RFC assessment of Dr. Dan Donahue, a non-examining, consultative examiner.  (Tr. 243-263).  After reviewing plaintiff's medical records, Dr. Donahue  determined that plaintiff had moderate limitations with regard to understanding, remembering, and carrying out detailed instructions; maintaining attention; completing a normal workday; interacting with the public; setting realistic goals; and, making plans independently of others.  He also concluded that plaintiff could perform work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote, with few variables, little judgment, and simple, direct, and concrete supervision. (Tr. 243-263).  Because it is clear that plaintiff's moderate limitations in attention, concentration, and pace were included in Dr. Donahue's conclusion that plaintiff could perform work  where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables, task requires little judgment, and involves simple, direct, and concrete supervision, we find that the expert's testimony is contradictory.  Therefore, on remand, the ALJ should clarify the expert's testimony.

## IV.    <u>Conclusion:</u>

Based on the foregoing, we recommend reversing and remanding the decision of the ALJ pursuant to sentence four.  **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.**

**The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of October 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE